UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ESTRADA,<br><br>    Plaintiff,<br><br>  v.<br><br>G. HOPKINS, et. al.,<br><br>    Defendants. | **CASE NO. 1:15-cv-01807-LJO-MJS (PC)**<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>**(ECF NO. 1)**<br><br>**THIRTY (30) DAY DEADLINE TO AMEND** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. His December 3, 2015 complaint is before the Court for screening. He has declined Magistrate Judge jurisdiction in this case.

**I.   SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners and pretrial detainees seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. PLEADING STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  While factual allegations are accepted as true, legal conclusions are not.  Iqbal, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  This requires the presentation of factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## III. PLAINTIFF'S ALLEGATIONS

Plaintiff is currently incarcerated at California State Prison, Corcoran ("CSP-Corcoran") in Corcoran, California.  Plaintiff brings this action against Defendants Correctional Lieutenant G. Hopkins of the Office of Correctional Safety ("OCS"), Correctional Officer J. Pierce of CSP-Corcoran, and OCS itself for retaliation in violation of the First Amendment and cruel and unusual punishment in violation of the Eighth Amendment.  Plaintiff sues each Defendant in his or her personal and official capacities

for monetary and injunctive relief.  Plaintiff's allegations may be summarized essentially as follows:

### A. Background

Plaintiff is a former associate of the Mexican Mafia gang, which is classified as a Security Threat Group ("STG") by CSP--Corcoran prison authorities. Because of this association, he has been administratively segregated in the Security Housing Unit ("SHU") since June 15, 2005.  Plaintiff has successfully met all criteria to be classified as "inactive" in the gang, under Title 15 of the California Code of Regulations, but still remains in the SHU.  Plaintiff's confinement in the SHU alongside active members of the Mexican Mafia presents a threat to his safety and the safety of his (non-incarcerated) family members.  It has also exacerbated Plaintiff's mental health problems.  He has sought to be removed from the SHU through participation in the "debriefing program."[1] However, according to an August 25, 2011 memorandum authorized by Defendant Hopkins, Plaintiff was removed from the debriefing program because he was a "drop-out with safety concerns" who "could not debrief if he is not involved in gang activities." Plaintiff maintains he could not provide information because he had not had any recent involvement with the Mexican Mafia.

### B. Plaintiff's 602s

Over the course of Plaintiff's incarceration, he has filed numerous inmate appeals ("602s") complaining about staff misconduct.  He even submitted a letter to the Los Angeles Times describing the staff misconduct he witnessed.  No Defendant ever advised him of any action taken on or any results of his appeals.

### C. Plaintiff's Mental Health

For the past three years, a prison employee (who has since resigned) wrongfully provided Plaintiff mind-altering medications which caused, and still cause, hallucinations, uncharacteristic behavior, and other undesirable side effects. These symptoms are

---

[1] The "debriefing program" appears to be a process by which prison officials evaluate the sincerity of a known gang member's disassociation from the gang by, among other things, requiring him to provide intelligence on gang-related activities.

3

exacerbated by Plaintiff's continued confinement in the SHU.  Defendant Hopkins was aware of this misconduct and did nothing to stop it.

### D. Threats to Plaintiff's Family

In addition, Plaintiff's family members have been subjected to threats and harassment by prison officials, all to Plaintiff's further distress.  During one interview with Plaintiff about Plaintiff's family, Defendant Hopkins was sweating profusely, was out of breath, and was sitting very close to Plaintiff, causing Plaintiff to feel he and his family were threatened.  Plaintiff's mother later wrote and told Plaintiff she had received threatening calls from Defendant Hopkins in which he said "[her] son had pissed some people off and that these people get even by going after families."

### E. Plaintiff's Interview with Los Angeles Sheriff's Department Detectives

Defendant Pierce attended a September 6, 2013 Los Angeles Sheriff's Department detectives interview of Plaintiff about an ongoing investigation.  Defendant Pierce appeared to only be present as an escort.  He did not speak at all during the interview.  At the time, Plaintiff was experiencing severe symptoms of opioid withdrawal.

Sometime afterward, Plaintiff read in his confidential file that Defendant Pierce had characterized Plaintiff as having been evasive during the interview.  He said Plaintiff embellished facts and admitted to using heroin and methamphetamines while incarcerated, all of which led Defendant Pierce to conclude that Plaintiff was unreliable.  As a result, Plaintiff fears all prison officials will believe Plaintiff is unreliable and untrustworthy, further frustrating his efforts to be removed from the SHU.

### F. Defendants' Retaliatory Actions

Plaintiff believes Defendants Hopkins and OCS retaliated against Plaintiff for filing 602s, reporting staff misconduct to the press, having mental health issues, and refusing to provide information about gang activity.  They retaliated by: (1) refusing to allow Plaintiff to be released from the SHU; (2) refusing to allow Plaintiff to complete the debriefing program; (2) including false information in Plaintiff's confidential prison file; (3) denying Plaintiff's request to be transferred to a different facility; and (4) threatening

Plaintiff's family members.

Plaintiff believes Defendant Pierce gave an unfavorable account of Plaintiff's interview in retaliation for Plaintiff filing 602s against staff members and for Plaintiff having mental health issues, in violation of the ADA.

## IV.  DISCUSSION

### A.  Eleventh Amendment Immunity

Plaintiff names OSC, a division of CDCR, as a defendant. However, the Eleventh Amendment erects a general bar against federal lawsuits brought against the state. Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010) (citation and quotation marks omitted). While "[t]he Eleventh Amendment does not bar suits against a state official for prospective relief," Wolfson, 616 F.3d at 1065-66, suits against the state or its agencies are barred absolutely, regardless of the form of relief sought. See, e.g., Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Buckwalter v. Nevada Bd. of Medical Examiners, 678 F.3d 737, 740 n.1 (9th Cir. 2012). Thus, Plaintiff may not maintain a claim against CDCR or the OSC. This defect is not capable of being cured by amendment.

Plaintiff may be able to proceed against individual members of OSC, to the extent he is otherwise able to state a cognizable claim against them. However, to do so, he must identify the individual OSC member and link that person to the alleged unconstitutional conduct. If he is not able to identify OSC members by name, he may proceed against them as Does.

Generally, the use of Doe defendants is disfavored in federal court. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting Gillespie v. Civiletti, 629 E.2d 637, 642 (9th Cir. 1980)). The Court cannot order the Marshal to serve process on any Doe defendants until such defendants have been identified. See, e.g., Castaneda v. Foston, No. 1:12-cv-00026 WL 4816216, at *3 (E.D. Cal. Sept. 6, 2013). Plaintiff may, under certain circumstances, be given the opportunity to identify unknown defendants through discovery prior to service. Id. (plaintiff must be afforded an opportunity to identify

unknown defendants through discovery unless it is clear that discovery would not uncover their identities). However, in order to proceed to discovery, Plaintiff must first state a cognizable claim.

Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Therefore, Plaintiff must distinguish between Doe defendants by, for example, referring to them as "John Doe 2," "John Doe 3," and so on, and describe what each did or failed to do to violate Plaintiff's rights. See Ingram v. Brewer, No. 1:07-cv-00176-OWW-DLB, 2009 WL 89189 (E.D. Cal. January 12, 2009) ("In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.").

### B.  Eighth Amendment Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).

Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. See, e.g., Farmer v. Brennan, 511 U.S. 825, 847 (1994); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). "Deliberate indifference describes a state of mind more blameworthy than negligence" but is satisfied by something "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 at 835.

California regulations allow for inmates to be placed in administrative segregation when the inmates' safety is jeopardized in the general population, when the inmate poses a threat to the safety of others, or when the inmate endangers institutional security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity. 15 Cal. Code Regs. § 3335. While the placement of an inmate in the administrative segregation unit in and of itself is not an inhumane condition of confinement, courts have found that confinement in an administrative segregation unit may give rise to a constitutional claim if that confinement creates inhumane conditions for the inmate. See, e.g., Hearns v. Terhune, 413 F.3d 1036, 1042-43 (9th Cir. 2005) (holding that plaintiff's allegation that he was confined in administrative segregation for nine months, during which time he was deprived of clean running water, was sufficient to make out a conditions of confinement claim); Lopez v. Smith, 203 F.3d 1122, 1133 (9th Cir. 2000) (holding that plaintiff's allegation that his months-long confinement in administrative segregation violated the Eighth Amendment protection against inhumane conditions of confinement when he was prevented from engaging in outdoor exercise was sufficient to survive summary judgment); Coleman v. Wilson, 912 F. Supp.3d 1282, 1319 (E.D. Cal. 1995) (finding that the confinement of mentally ill inmates in California's administrative segregation units constituted deliberate indifference to a substantial risk of harm to these inmates).

Plaintiff fails to state an Eighth Amendment claim on the basis of his confinement in the SHU. He provides no details about the nature of the confinement that suggest it subjected him to inhumane conditions. The Court will give Plaintiff leave to amend to plead additional facts to satisfy the two-prong conditions of confinement test as set forth above and describe what it is about his SHU confinement that he contends rendered it inhumane.

### C. Fourteenth Amendment Due Process

#### 1. Processing of Plaintiff's 602s

Plaintiff alleges that Defendants violated his due process rights by not providing him with their individual findings from their investigations of Plaintiff's inmate appeals.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Plaintiff's due process claim against Defendants will therefore be dismissed.

#### 2. Extended Confinement in the SHU

While Plaintiff does not raise a Fourteenth Amendment Due Process argument pertaining to his protracted confinement in the SHU, the Court will advise him of the standards for raising such a claim.

In general, a prisoner has no liberty interest in avoiding transfer to more restrictive conditions of confinement, such as a transfer from the general population to segregation, unless he can show an atypical and significant hardship in relation to the ordinary incidents of prison life. Wilkinson v. Austin, 545 U.S. 209, 221-223 (2005); Sandin v. Connor, 515 U.S. 472, 484 (1995). "Typically, administrative segregation in and of itself does not implicate a protected liberty interest." Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003); May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence). Administrative segregation may implicate due process if the confinement imposes an atypical and significant hardship. See, e.g., Wilkinson, 545 U.S. at 223-224 (inmates' liberty interests were implicated by their indefinite confinement in highly restrictive "supermax" prison, where the inmates were deprived of almost all human contact and

were disqualified from parole consideration); Serrano, 345 F.3d at 1078-1079 (placing disabled inmate, without his wheelchair, in segregation unit not equipped for disabled persons gave rise to liberty interest.)

The assignment of validated gang members and associates to the SHU is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative discretion." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)). As a result, prisoners are entitled to the minimal procedural protections of adequate notice, an opportunity to be heard, and periodic review. Bruce, 351 F.3d at 1287 (citing Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986), *abrogated in part on other grounds by* Sandin, 515 U.S. at 472). Only "some evidence" is required to support the decision to place an inmate in administrative confinement. Toussaint, 801 F.2d at 1105. When an inmate is confined to administrative segregation, due process requires that he: (1) be informed of the charges against him or the reason for his segregation; (2) an informal non-adversarial hearing be held within a reasonable time; and (3) the inmate must be allowed to present his views. Toussaint, 801 F.2d at 1100. The Due Process Clause does not require the inmate receive detailed written notice, representation by counsel, an opportunity to present witnesses, a written decision detailing the reason the inmate was placed in administrative segregation, or disclosure of the identity anyone who provided information that lead to the placement in administrative segregation. Id. at 1100-01. Furthermore, the periodic review must be more than "meaningless gestures" to satisfy due process. Toussaint v. Rowland, 711 F.Supp. 536, 540 n. 11 (N.D.Cal.1989) (citing Toussaint v. McCarthy, 801 F.2d at 1102).

Plaintiff has not alleged any facts regarding the procedures he has been provided (or denied) in relation to his confinement in the SHU. Accordingly, he fails to state a Due Process claim.

### D. Eighth Amendment Failure to Protect

Based on Plaintiff's allegations, he may also intend to allege an Eighth Amendment conditions of confinement claim against Defendants for forcing Plaintiff to remain in the SHU with members of Plaintiff's former gang after Plaintiff had disassociated from them. Should Plaintiff believe he can support such a claim, the standards are outlined below.

Under the Eighth Amendment, prison officials have a duty to take reasonable steps to protect inmates from assaults at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994). To establish a violation of this duty, the prisoner must show first, that he was incarcerated under conditions posing a substantial risk of serious harm; and second, that a prison official knew of and was deliberately indifferent to this risk. Id. at 834. While an inmate cannot meet Farmer's first prong by raising purely speculative fears of attacks from other inmates, Contreras v. Collins, 50 Fed. Appx. 351, 352 (9th Cir. 2002), he need not have actually suffered harm in order to obtain injunctive relief from unsafe conditions. Farmer, 511 U.S. at 845. Furthermore, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. at 833. The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when "(1) the deprivation alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." Hearns, 413 F.3d at 1040 (quoting Farmer, 511 U.S. at 834).

At present, Plaintiff does not plead sufficient facts to allege a cognizable failure to protect claim. While he makes conclusory statements alleging his "safety concerns" with his former gang associates within the SHU, he alleges no specific instances of violence or threats of violence made against him by these inmates.

### E. First Amendment Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th

10

Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord* Watison v. Carter, 668 F.3d at 1114-15; Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Brodheim v. Cry, 584 F.3d at 1269.

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce, 351 F.3d at 1289 (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

Plaintiff argues Defendants retaliated against him for filing 602s regarding staff misconduct, for disclosing said misconduct to the Los Angeles Times, for failing to provide information to Defendants regarding gang activity in the prison, and for having mental health issues. They retaliated by forcing Plaintiff to remain in the SHU, writing and filing a false report regarding Plaintiff's credibility, threatening Plaintiff's family in order to cause Plaintiff distress, and refusing Plaintiff's request to be transferred to a different facility. As pled, Plaintiff has failed to state a valid retaliation claim.

First, Plaintiff provides no more than conclusory allegations to support any of his claims that Defendants retaliated against him. Beyond Plaintiff's mere surmise or suspicion, there is nothing in the pleadings showing any connection between what Plaintiff says triggers retaliation and what he considers adverse action against him.

Nothing suggests his continued placement in the CSP-Corcoran SHU is for any reason beyond legitimate penological concerns. Plaintiff's initial gang validation furthered the legitimate goal of preserving the safety and security of CSP-Corcoran by "frustrating prison gang indoctrination and group solidarity." In re Furnace, 185 Cal. App. 4th, 649, 665 (5th Dist. Cal. 2010). [2]

Similarly, Pierce's unfavorable report of Plaintiff's interview with Los Angeles Sheriff's Department detectives seems on its face to advance a legitimate penological goal. Correctional officers would reasonably be expected to make such reports as a part of their duties, and there is no indication that Defendant Pierce's report contained anything more than Defendant Pierce's own observations and opinions. Finally, Plaintiff

---

[2] Indeed, one could argue that Plaintiff was kept in the SHU *for* his own safety, to protect him from violence at the hands of his former gang associates in the general population. See Madrid v. Gomez, 889 F. Supp 1146, 1272 (N.D. Cal. 1995) ("[A]dministrative segregation may properly be used to protect the prisoner's safety.")

12

has failed to allege that Defendant OCS's refusal to transfer Plaintiff to a different facility was motivated by anything other than legitimate penological goals.

Plaintiff also fails to show that Defendant Hopkins or any members of OCS actually threatened or harassed Plaintiff's family. The alleged basis for perceiving threats -- Hopkins was "sweating profusely" and "sitting very close;" Hopkins told Plaintiff's family of "imminent threats" -- do not constitute threats.

Finally, Plaintiff claims that he was retaliated against for having a mental illness. Even if he had alleged a factual basis for such a claim, having a mental illness does not qualify as protected conduct for the purposes of a first amendment retaliation claim

Plaintiff's retaliation claims will therefore be dismissed with leave to amend.

**F.**     **Americans With Disabilities Act**

Plaintiff claims Defendants Hopkins, Pierce, and OCS discriminated against Plaintiff because of his mental illness, in violation of the Americans with Disabilities Act ("ADA"). The ADA is applicable to state prisoners. Armstrong v. Wilson, 124 F.3d 1019, 1022-23 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453 (9th Cir. 1996). In order to state a claim under Title II of the ADA, a plaintiff must allege:

> (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'

McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir.2004) (quoting Thompson v. Davis, 295 F.3d 890, 895 (9th Cir.2002) (per curiam)). The ADA defines "disability," in pertinent part, as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). Although § 12132 does not expressly provide for reasonable accommodations, the implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the

modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). The duty to provide "reasonable accommodations" or "reasonable modifications" for disabled people under Title II of the ADA arises only when a policy, practice or procedure discriminates on the basis of disability. Weinreich v. Los Angeles Cnty. MTA, 114 F.3d 976, 979 (9th Cir.1997).

Finally, to recover monetary damages under Title II of the ADA, Plaintiff must prove intentional discrimination on the part of the defendant. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001) (quotation marks and citation omitted). The standard for intentional discrimination is deliberate indifference, and where an entity has notice of the need for accommodation and fails to act, the deliberate indifference test has been met, so long as the failure to act is the result of more than negligence and involves an element of deliberateness. Lovell, 303 F.3d at 1056; Duvall, 260 F.3d at 1138-40.

Plaintiff alleges that his mental illness constitutes a disability, but he provides no supporting facts or allegations that could justify an ADA claim. He does not allege that he was excluded from participation in or denied the benefits of any services, programs, or activities due to his disability. Nor does he allege he was denied reasonable accommodations or modifications in relation to a discriminatory policy, practice, or procedure. Plaintiff's current claim, that adverse actions were taken against him because of his mental illness, do not make out discrimination pursuant to the ADA.

### G. Fourteenth Amendment Equal Protection

Finally, to the extent Plaintiff believes he can pursue a claim for discrimination based on disability, the standard is outlined below.

The Equal Protection Clause of the Fourteenth Amendment dictates that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. Plyler v. Doe, 457 U.S. 202, 216 (1982). An equal protection claim may be based upon a showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class, see e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686

(9th Cir. 2001), or upon a showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432 (1985).

Plaintiff alleges that his mental illness constitutes a disability. However, as the disabled are not a protected class for Equal Protection purposes, Plaintiff may only make out an Equal Protection Claim if he can show that he was treated differently from other similarly situated individuals on the basis of his disability and without a rational relationship to a legitimate state purpose. Lee, 250 F.3d at 687.

### H. Official Capacity Claims

Plaintiff names Defendants in their individual and official capacities.

Plaintiff cannot recover money damages from state officials in their official capacities. Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). Official capacity suits may seek only prospective relief. See Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010). Additionally, "official capacity" suits require that a policy or custom of the governmental entity is the moving force behind the violation. McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986).

Here, while Plaintiff seeks prospective injunctive relief, he has not alleged that any custom or policy motivated Defendants' conduct. Accordingly, Plaintiff's official capacity claims will be dismissed with leave to amend.

### V. CONCLUSION AND ORDER

Plaintiff's complaint fails to state a cognizable claim against any Defendants for engaging in cruel and unusual punishment in violation of the Eighth Amendment, for First Amendment retaliation, or for any other constitutional violation. Plaintiff's complaint also fails to state a cognizable claim against any Defendants for violating the Americans with Disabilities Act.

The Court will provide Plaintiff with the opportunity to file an amended complaint, if he believes, in good faith, he can cure the identified deficiencies. Akhtar v. Mesa, 698

F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

An amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint (ECF No. 1) is DISMISSED with leave to amend;
2. The Clerk's Office shall send Plaintiff a blank civil rights complaint form and a copy of his complaint filed December 3, 2015;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff must file an amended complaint curing the deficiencies identified by the Court in this order or a notice of voluntary dismissal;
4. If Plaintiff fails to file an amended complaint or notice of voluntary dismissal, the undersigned will recommend this action be dismissed, with prejudice, for failure to state a claim and failure to obey a court order, subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g).

IT IS SO ORDERED.

Dated:   June 15, 2016                         /s/ *Michael J. Seng*
                                               UNITED STATES MAGISTRATE JUDGE